UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
WURTH ELECTRONICS ICS, INC.,                 : Case No:
:
Plaintiff,                                   :
:
v.                                           : **VERIFIED COMPLAINT**
:
MOHAMED ELEMARY,                             :
UHANDIS PRODUCT DESIGN, LLC                  :
:
Defendants.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Wurth Electronics ICS, Inc. ("Wurth"), by counsel, allege for its Verified Complaint against Defendants Mohamed Elemary ("Elemary") and Uhandis Product Design, LLC ("Uhandis") (collectively, "Defendants") as follows:

**NATURE OF THE ACTION**

1.  This is a civil action for a temporary restraining order, preliminary and permanent injunctive relief to address the imminent and irreparable harm caused by Wurth's former employee Mohamed Elemary during and following his separation from Wurth. Additionally, Wurth seeks monetary relief as a result of Elemary's breaches of his Employment Agreement with Wurth, and violations of the Defend Trade Secret Act ("DTSA").

2.  Prior to his departure, Elemary took and wrongfully converted Wurth's and its customers/vendors confidential and proprietary documents. Elemary's deliberate scheme consisted of sending confidential documents from his Wurth email address to his personal e-mail address and immediately deleting the outgoing email to avoid detection by Wurth. Unbeknownst to Wurth, Elemary took the confidential and proprietary documents to use and benefit his new competing company, Uhandis in violation of his non-compete obligations.

3. Once Elemary's employment ended in January 2023, Wurth conducted an investigation of his computer and uncovered the extent of Elemary's wrongdoing. Wurth discovered that Elemary, in violation of his Employment Agreement, converted confidential and proprietary documents including but not limited to vendor quotes, customer data, customer proposals, product information, product drawings, Wurth's employee handbook and sales data ("Confidential Documents").

4. Due to the sensitive nature of Wurth's business relationships and exchange of confidential and proprietary information and documents, Wurth routinely enters into non-disclosure agreements with its vendors/customers. By Elemary's actions, Wurth is in violation of numerous non-disclosure agreements as Wurth is unable to track and/or monitor the whereabouts of the confidential documents sent outside of Wurth's server to Elemary's unsecured personal email account and potentially to third-parties (including competitors of Wurth).

5. While Elemary's actions have caused substantial harm to Wurth and its business operations, the harm remains ongoing as Elemary continues to operate Uhandis in Yellow Springs, Ohio. Uhandis has already partnered with two direct competitors of Wurth including MT Connectivity GmbH and CVEP, and upon information and belief, potentially a third, Little Fuse.

6. Upon information and belief, Defendants are utilizing Wurth's and its customers/vendors confidential documents and information which were wrongfully converted during his employment at Wurth and not returned at the time of his termination, for their personal and professional gain to the detriment of Wurth (and its customers/vendors).

7. Accordingly, Wurth seeks injunction relief as follows: (a) enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from using, possessing, sending, sharing, or disclosing Wurth's and its vendors/customers confidential

and proprietary documents to any third-party; (b) enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from deleting, destroying or discarding any of Wurth's confidential and proprietary documents; (c) requiring Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) to return of any and all of Wurth's confidential and proprietary information that are in Defendants' possession which was wrongfully converted for their personal and professional use; (d) an order permitting immediate and expedited discovery to allow Wurth to ascertain the full extent of Defendants' improper conduct and the extent of damages they have caused Wurth to suffer;  and (e) requiring Elemary to abide by the valid Confidentiality, Non-Compete and Non-Solicit provisions found in Elemary's Employee Agreement with Wurth for a period of one (1) year.

## THE PARTIES

8. Wurth is a Delaware Corporation operating under the laws of Delaware with a principal place of business located at 1982 Byers Rd, Miamisburg, Ohio 45342.

9. Defendant Uhandis is upon information and belief, an Ohio limited liability company that is owned and operated under the laws of Ohio with a principal place of business at 1108 Xenia Avenue, Yellow Springs, Ohio 45387.

10. Elemary is a citizen of the State of Ohio who resides in Yellow Springs, Ohio.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court under 28 U.S.C. § 1331, as Wurth asserts claims arising under the laws of the United States.

12. Jurisdiction over Wurth's state law claims is proper in this Court under 28 U.S.C. § 1367, because those claims are so related to Wurth's federal claims that they form part of the same case or controversy.

13. This Court has jurisdiction over Defendant Uhandis as it conducts business in Ohio and in this District. This Court has personal jurisdiction over Elemary because he is a citizen of Ohio. Additionally, Elemary knowingly and voluntarily executed an Employment Agreement with Wurth consenting to jurisdiction of any claims arising under that agreement, in the State of Ohio.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the Wurth's claims occurred in this District, and Wurth's headquarters are located in Miamisburg, Ohio.

## FACTUAL BACKGROUND

**Wurth's Business Operations**

15. Wurth is a supplier of intelligent power and control systems and components for signal and power distribution, control of functions, as well as display and operating solutions. Wurth also supplies industries such as on and off highway commercial vehicles and automotive including electrification of mobile vehicles and other industrial technology and renewable energies with high-quality standardized or customized solutions. Wurth's customers benefit from its comprehensive service and know-how – from the initial idea to the series production of their products.

16. Wurth is the preferred partner of many developers and manufacturers from a wide range of industries. With its electronic and electromechanical components, printed circuit boards, and intelligent power and control systems, Wurth offers innovative solutions, top quality, and outstanding service to its customers.

17. As a global leader in electronic and electromechanical components, Wurth also provides consulting services, reference designs, and software tools, printed circuit boards for

4

customer-special requirements, and Intelligent Power and Control Systems for extreme operating conditions.

18. Wurth currently has one production side in the United States (and four production sites around the world) and has grown over the past 50 years to become an internationally successful company throughout various markets.

19. Due to the highly sensitive nature of the industry, Wurth's customers/vendors require Wurth to execute a non-disclosure agreement in order to explore a potential business arrangement and ensure that any and all confidential, proprietary documents and trade secrets are kept confidential and not disseminated to the public or any third-party.

**Elemary's Employment at Wurth**

20. In or about January 2020, Elemary joined Wurth as the Director of Engineering.

21. As a Director of Engineering, Elemary's job duties included management of technical teams and the New Product Introduction Engineering team, leading and executing a portfolio of custom product development projects, sales, product consultation for customers, and management of the development, maintenance and improvement of all automated test tools. Elemary's job duties are more fully outlined in his job description, which is attached hereto as **Exhibit B** and incorporated in full herein.

22. In that capacity, Elemary was privy to Wurth's most coveted proprietary documents including but not limited to Wurth's customer/vendor lists, vendor quotes, customer data, customer proposals, product information, product drawings, and sales data.

23. To ensure that Wurth and its customers/vendors information and documents remained confidential, Wurth required Elemary to execute an Employee Agreement **RELATIVE TO IDEAS, INVENTIONS, PATENT APPLICATIONS, PATENTS, TRADEMARKS,**

**COPYRIGHTS, TRADE SECRETS, CONFIDENTIAL INFORMATION AND NON-COMPETE COVENANTS** which was executed on or about January 6, 2020 ("Elemary's Employment Agreement").  **Exhibit A.**

24. Elemary's Employment Agreement, specifically Paragraphs 3 and 4, contains certain obligations with respect to maintaining the confidentiality of Wurth's information and documents and the return of Wurth's confidential information and documents at the time of Elemary's termination.  It states as follows:

> During and after such employment I will not divulge to others or appropriate for my own use or benefit or for the use or benefit of others, any information I may acquire or develop, or have acquired or developed, during my employment which relates to the company's discoveries, inventions, trade secrets or other confidential information, unless and until such information becomes generally available to the public through no fault of my own or unless such disclosure or appropriation is authorized in writing by the company.
>
> \*\*\*
>
> Upon termination of such employment I will deliver to the company without making or retaining any copies thereof any and all drawings, writings, prints, documents, listings or anything containing, embodying or disclosing any discoveries, inventions, product information, technical data, product data, financial data, trade secrets or confidential information of the company or its suppliers, customers or prospective customers which are in my possession, custody or control, unless authorized in writing by the company.

**(Ex. A, ¶¶ 3-4).**

25. Additionally, Elemary's Employment Agreement contains valid and enforceable non-compete and non-solicitation provisions as follows:

> Should my employment with the company terminate for any reason I will adhere to the following:
>
> a) Non-Compete: During employment with the company and for a period of 1 year after my termination of employment or after my resignation by becomes effective, I shall not, without the prior written consent of the company, directly or indirectly, as employer, employee, stockholder, director, partner, agent, consultant, representative or in any other individual or representative capacity

whatsoever, engage in the design, manufacturing, distribution or sale of products of the types distributed or sold by the company during the five (5) year period preceding said effective date of termination or resignation.

\*\*\*

      b)      Non-Solicitation: For a period of 1 year after my termination of employment or after my resignation becomes effective, I shall not, without the prior written consent of the company, directly or indirectly, solicit (or participate in any business which solicits business from) any person, firm or corporation which is or was either a customer or a supplier of the company during the five (5) year period preceding the date hereof, or from any successor to any such person, firm or corporation, for the purpose of securing either orders or a source of supply for products of the types sold or distributed by the company during the five (5) year period preceding said effective date or termination of resignation.

**(Ex. A, ¶ 9).**

26.    Thus, Elemary was required to abide by the non-compete and non-solicitation provision for a period of one (1) year following his termination of employment from Wurth.

27.    Elemary's Employment Agreement also contains a jurisdiction and choice of law provision stating that "the State of Ohio shall govern the interpretation, validity and effect of this agreement without regard to the place of making or the place of performance." **(Ex. A, ¶ 10).**

28.    Additionally, Wurth provided Elemary with a copy of its Employee Handbook at the commencement of his employment.

29.    The Employee Handbook contains an entire section dedicated to Confidential Information and Elemary's obligations during his employment and post-separation. Specifically, the Employee Handbook states:

**Confidential Information**

The protection of confidential business information and trade secrets is vital to the interests and success of WE-ICS Inc. Confidential information is any and all information disclosed to or known by you because of employment with the company that is not generally known to people outside the company about its business.

7

> An employee who improperly uses or discloses trade secrets or confidential business information will be subject to disciplinary action up to and including termination of employment and legal action, even if he or she does not actually benefit from the disclosed information.
>
> All inquiries from the media must be referred to the Chief Executive Officer.
>
> This provision is not intended to, and should not be interpreted to, prohibit employees from discussing wages and other terms and conditions of employment if they so choose.

**(Exhibit C).**

30. Elemary acknowledged receipt of Wurth's Employee Handbook and his obligations to comply with the Confidential Information provision.

**Elemary's Wrongful Conversion of Wurth's Confidential Documents and Breach of His Employment Agreement**

31. After the parties entered into the Employment Agreement, Elemary continued in his role as Director of Engineering for three years. While performing services for Wurth, as the Director of Engineering, Elemary utilized Wurth's confidential information and documents including such confidential information obtained from Wurth's customers/vendors and subject to a non-disclosure agreement.

32. In early January 2023, Elemary notified Wurth of his resignation as Director of Engineering effective immediately.

33. Following his resignation, Wurth conducted an investigation of Elemary's company-issued computer and his Wurth e-mail account and discovered that Elemary wrongfully converted confidential information from Wurth before his resignation.

34. Unbeknownst to Wurth, Elemary engaged in an elaborate scheme by sending numerous e-mails to his personal email address from his Wurth work email address and then immediately deleted the e-mail from his Wurth outbox/sent folder to avoid detection.

35. Elemary's wrongful conduct occurred in the days and weeks preceding his resignation.

36. Among the converted e-mails were attachments containing vendor quotes, customer data, customer proposals, product information, product drawings, and sales data.

37. None of the information and/or documents taken by Elemary is available to the public. Rather, the converted documents are highly confidential and subject to non-disclosure agreements with Wurth's customers/vendors.

38. As a result of Elemary's action, and sending confidential information to his personal e-mail address, Wurth cannot monitor or track the whereabouts of the documents and/or information including whether it has been shared with third-parties (including Wurth's competitors).

**Elemary's Formation of Uhandis – A Competing Business**

39. In January 2023, Elemary registered a new company, Uhandis Production Design, LLC. Upon information and belief, and according to his LinkedIn page, Elemary is the Founder and Chief Technology Office ("CTO") of Uhandis. **Exhibit D.**

40. Similar to Wurth's business operations, Uhandis provides standardized and customized solutions with respect to e-mobility, renewable energy, agriculture vehicles, battery storage, consumer electronics, heavy machinery and commercial vehicles. Specifically, Uhandis provides "innovative product design services across low voltage, high voltage custom Power Distribution Units (PDU, PDC), Controllers, and Human Machine interface (HMI) specializing in complex products & industries."[1]

---

[1] https://www.uhandis.com/home

41. Uhandis' headquarters are located in Yellow Spring, Ohio – only 30 miles from Wurth's headquarters and where Elemary worked for more than three years.

42. Since its inception, Uhandi has partnered with two of Wurth's direct competitors, MT Connectivity and CVEP[2].

43. According to Uhandis' website, MT Connectivity supplies Uhandi with "innovative Power Elements, PCB connectors, fuse and relay sockets for automotive, e-Mobility, medical and many other industrial high tech applications." *Id.*

44. MT Connectivity's President Marion Tolj worked at Wurth for approximately 15 years. However, upon his departure, Tolj converted confidential information from Wurth which was later seized by the German police.

45. Upon information and belief, Tolj, for the benefit of his company MT Connectivity (and Uhandis) orchestrated and conspired with Elemary to convert Wurth's confidential and proprietary information and documents.

46. Because Defendants engage in the design, manufacturing, distribution or sale of products of the types distributed and/or sold by Wurth, it is clear that Uhandis, and its partners, are direct competitors of Wurth. As such, Elemary is in violation of his non-compete agreement with Wurth.

47. Upon information and belief, and in direct violation of Elemary's Employment Agreement, Uhandis has also solicited and continues to solicit Wurth's customers/vendors.

---

[2] https://www.uhandis.com/partners

**FIRST CAUSE OF ACTION**
**(Violation of Economic Espionage Act, as Amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.)**

48. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth at length herein.

49. During his employment with Wurth, Elemary misappropriated and wrongfully converted Wurth's confidential and proprietary information, including trade secrets related to products and services for its customers/vendors.

50. Defendants misappropriated this confidential information and trade secrets and have received, possessed, and benefitted from them knowing that they were obtained without authorization from Wurth.

51. The information that Defendants misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.

52. Defendants' misappropriation of Wurth's trade secrets was willful and malicious. Wurth is entitled to exemplary damages in an amount up to twice-actual damages awarded.

53. As direct consequence of Defendants' misappropriation, Wurth has suffered damages for actual loss in an amount to be proven at trial, including attorneys' fees and costs.

54. As a direct consequence of Defendants' misappropriation, Wurth is entitled to injunctive relief, enjoining Defendants, and all those acting in concert or participation with them, from further accessing, using or disclosing Wurth's confidential and proprietary information and trade secrets, and otherwise providing goods or services to any of the Wurth's vendors/customers.

**SECOND CAUSE OF ACTION**
**(Violation of Ohio Uniform Trade Secrets Act, R.C. §§1333.61, *et seq.*)**

55. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth at length herein.

56. Wurth re-asserts and re-alleges each and every allegation as set forth in Wurth's First Cause of Action, as such actions constitute identical violations of the Ohio Uniform Trade Secrets Act ("OUTSA"), R.C. §§1333.61, *et seq.*, in this case.

57. Defendants' misappropriation of Wurth's trade secrets was willful and malicious. Wurth is entitled to punitive damages in an amount up to three times the damages awarded, as well as to attorney's fees incurred in this action.

58. As direct consequence of Defendants' misappropriation, Wurth has suffered damages for actual loss in an amount to be proven at trial, including attorneys' fees and costs.

59. As a direct consequence of Defendants' misappropriation, Wurth is entitled to injunctive relief, enjoining Defendants, and all those acting in concert or participation with them, from further accessing, using or disclosing Wurth's confidential and proprietary information and trade secrets, and otherwise providing goods or services to any of the Wurth's vendors/customers.

**THIRD CAUSE OF ACTION**
**(Breach of Contract/Breach of Employment Agreement)**

60. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth at length herein.

61. Wurth entered into valid and enforceable Employment Agreement with Elemary as a precondition for his employment with Wurth.

62. Additionally, Defendants acknowledged and agreed to abide by Wurth's Employee Handbook.

63. Elemary received consideration for signing and entering into the contracts containing such non-disclosure, non-solicitation, non-compete and confidentiality provisions.

64. Elemary specifically warranted and agreed that he would not disclose to any person or use for his own purposes any of Wurth's confidential and proprietary Information. Also Elemary warranted and agreed that he would return all of Wurth's documents and other property, including the confidential and proprietary information.

65. Elemary has breached his Employment Agreement with Wurth, as well as Wurth's Employee Handbook. Without authorization from Wurth, Elemary wrongfully converted the confidential and proprietary information belonging to Wurth and has retained and improperly used that information prior to and after the termination of his employment with Wurth.

66. Wurth's confidential and proprietary information at issue is not generally known to Wurth's competitors through legitimate means, and is the subject of reasonable protective measures.

67. In direct violation of his non-compete agreement, Elemary formed and began operating a competing business Uhandis within one (1) year of his separation from Wurth.

68. Wurth has suffered actual damages as a result of Elemary's breaches. As such, Wurth is entitled to monetary damages and injunctive relief against Defendant.

69. Wurth has suffered, and will continue to suffer, irreparable harm as a direct result of Elemary's breach of his confidentiality, non-compete and non-disclosure obligations until such time as he is ordered to cease using Wurth's confidential, trade secret, and proprietary information.

70. Injunctive relief is necessary as Wurth is without an adequate remedy at law to prevent this harm to Wurth.

## FOURTH CAUSE OF ACTION
### (Breach of the Duty of Loyalty/Faithless Servant)

71. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth at length herein.

72. As Wurth's employee, Elemary owed Wurth a duty of loyalty.

73. Elemary violated this duty of loyalty by a variety of actions including, without limitation: downloading, sending, and wrongfully converting and possessing copies of Wurth's vendor quotes, customer data, customer proposals, product information, product drawings, Wurth's employee handbook and sales data.

74. Elemary further breached his duty of loyalty by retaining that information after the termination of his employment relationship with Wurth, and using Wurth's confidential and proprietary information to compete with Wurth during and after his employment relationship with Wurth.

75. As a consequence of Elemary's actions, Wurth's professional reputation and business relationships with its existing and potential customers and business partners has been irrevocably harmed. In addition, the actions of Elemary has caused Wurth economic harm in the form of lost profits Wurth would have otherwise received, damages for usage of its confidential and proprietary information, and losses and damages for the time and expenses required to remedy the damage done to Wurth's business operations.

76. Wurth is entitled to monetary damages against Elemary in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

77. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

78. Elemary has profited from the aforementioned acts committed against Wurth and therefore, Elemary has been unjustly enriched at Wurth's expense.

79. It would be unjust to allow Elemary to retain the benefit of profiting at the expense of Wurth as a result of the foregoing.

80. By reason of the foregoing, Wurth has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Request for Temporary Retaining Order and Preliminary Injunction Against Defendants)**

81. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

82. As a result of Defendants' actions, Wurth has and will continue to suffer irreparable harm, including but not limited to damage to its professional reputation and business relationships with its existing and potential customers and business partners. In addition, the actions of Defendants has caused and will continue to cause Wurth economic harm in the form of lost profits Wurth would have otherwise received, damages for usage of its confidential and proprietary information, and losses and damages for the time and expenses required to remedy the damage done to Wurth's business operations.

83. If Defendants are not required to return Wurth's confidential and proprietary information, and abide by the valid confidentiality, non-compete and non-solicit provisions found in the Employee Agreement between Elemary and Wurth, Wurth will continue to suffer irreparable harm to its reputation, goodwill and franchise system.

84. Therefore, Wurth respectfully seeks the following injunctive relief:

    A. Enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from using, possessing, sending, sharing, or disclosing Wurth's and its vendors/customers confidential and proprietary documents to any third-party;

> B. Enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from deleting, destroying or discarding any of Wurth's confidential and proprietary documents;
>
> C. Requiring Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) to return of any and all of Wurth's confidential and proprietary information that are in Defendants' possession which was wrongfully converted for their personal and professional use;
>
> D. An order permitting immediate and expedited discovery to allow Wurth to ascertain the full extent of Defendants' improper conduct and the extent of damages they have caused Wurth to suffer; and
>
> E. Requiring Elemary to abide by the valid Confidentiality, Non-Compete and Non-Solicit provisions found in Elemary's Employee Agreement with Wurth for a period of one (1) year.

85. Wurth will likely succeed on the merits of its other causes of action, and it is probable that they will recover from Defendants, as Elemary is openly and actively breaching express, material terms of the Employee Agreement.

86. Irreparable harm will result if a preliminary injunction is not issued because Elemary will continue to use Wurth's confidential and proprietary information to compete with Wurth in direct violation of the valid non-compete and non-solicit entered into by the parties.

87. Wurth has no adequate remedy at law because Elemary refuses to abide by the express terms of Employee Agreement.

88. The injury to Wurth greatly outweighs any injury that would be sustained by Elemary as a result of the requested injunctive relief. Elemary will suffer no harm whatsoever from the injunction Wurth seeks because it will impose nothing more than to require Elemary to return Wurth's Proprietary and Confidential Information, cease using it, and permit Wurth's inspection of the materials to which he was not authorized to obtain and convert for his own use in the first place. On the other hand, the damage which Elemary will continue to

inflict upon Wurth in the absence of injunctive relief is immediate, substantial, and irreparable.

89. Injunctive relief will not adversely affect the public interest.

90. Elemary has been or is being served with notice of this application for injunctive relief.

## SEVENTH CAUSE OF ACTION
### (Request for Preliminary and Permanent Injunction)

91. Wurth repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

92. For the following preliminary and permanent injunctive relief:

   A. Enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from using, possessing, sending, sharing, or disclosing Wurth's and its vendors/customers confidential and proprietary documents to any third-party;

   B. Enjoining Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) from deleting, destroying or discarding any of Wurth's confidential and proprietary documents;

   C. Requiring Defendants (and those acting in concert including but not limited to MT Connectivity GmbH and CVEP) to return of any and all of Wurth's confidential and proprietary information that are in Defendants' possession which was wrongfully converted for their personal and professional use;

   D. An order permitting immediate and expedited discovery to allow Wurth to ascertain the full extent of Defendants' improper conduct and the extent of damages they have caused Wurth to suffer;

   E. Requiring Elemary to abide by the valid Confidentiality, Non-Compete and Non-Solicit provisions found in Elemary's Employee Agreement with Wurth for a period of one (1) year; and

   F. Enjoining Defendants from operating a competing business and soliciting Wurth's clients, in direct violation of the valid Non-Compete/Non-Solicit found in Elemary's Employee Agreement with Wurth.

93. After a trial on the merits or a final judgment, Wurth asks the Court to convert any preliminary injunction into a permanent injunction.

94. Wurth has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## **PRAYER FOR RELIEF**

95. In addition to injunctive relief, Wurth hereby seeks:

    A. An entry of judgment in favor of Wurth and against Defendants;

    B. An award of applicable compensatory damages, liquidated damages, expectancy damages, punitive damages, disgorgement of profits, attorneys' fees and costs to Wurth in connection with Defendants' breach, in amounts to be proven at trial;

    C. For pre- and post-judgment interest; and

    D. For such other relief as the Court deems just and appropriate.

Dated: March 17, 2023

                                                              GORDON REES, SCULLY, MANSUKHANI LLC
                                                             *Counsel for Plaintiff Wurth Electronics ICS, Inc.*

                                                             By:    */s/ Tyler Tarney*
                                                                     Tyler Tarney
                                                                     Peter Siachos (pro hac vice forthcoming)

                                                            41 South High Street, Suite 2495
                                                            Columbus, OH 43215
                                                            Tel: (614) 340 -5558

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WURTH ELECTRONICS ICS, INC.,

        Plaintiff,

v.

MOHAMED ELEMARY,
UHANDIS PRODUCT DESIGN, LLC

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No:

## **VERIFICATION**

    I, William J Triska, am Chief Executive Officer ("CEO") of Wurth Electronics ICS, Inc. ("Wurth"). I am authorized to make this Verification for and on behalf of Wurth.

    I have read the foregoing Verified Complaint; the facts and matters set forth therein have been assembled from the records of Wurth and were prepared with the assistance of employees and representatives of Wurth, upon which I have relied in making this Verification. Based upon the matters which have been made known to me for purposes of making this Verification, I state that I am informed and believe that the matters stated in Wurth's Complaint are true and correct. The grounds of my knowledge, information and belief are derived from my position as CEO at Wurth, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Wurth's records and conversations with Wurth employees, and Wurth representatives' conversations with Defendants.

    I verify under the penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2023

                                                                                                William J Triska